**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on December 19, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: December 19, 2007**



Arthur I. Harris
United States Bankruptcy Judge

___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 06-10551 |
| | ) | |
| MARY ANN NICHOLS, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

Before the Court is the motion of the debtor, Mary Ann Nichols, seeking review of attorney's fees paid to her former attorney, William Kaplan, as well as disciplinary action against attorney Kaplan (Docket # 32). The Court held an evidentiary hearing on July 25, 2007, and took the matter under advisement on August 3, 2007. For the reasons that follow, the Court will issue a separate order requiring attorney Kaplan to disgorge $800 in attorney's fees for the benefit of the debtor's estate and imposing further remedial sanctions upon attorney Kaplan.

___

[1]This opinion is not intended for official publication.

## JURISDICTION

The debtor's requests seeking review of attorney's fees paid to her former attorney, William Kaplan, as well as disciplinary action against attorney Kaplan are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FINDINGS OF FACT PURSUANT TO BANKRUPTCY RULE 9014(c) AND BANKRUPTCY RULE 7052[2]

Sometime around December 2005 or January 2006 the debtor, Mary Ann Nichols, met with attorney William Kaplan to discuss filing bankruptcy. At that meeting, the debtor paid Mr. Kaplan $695 for his attorney's fees and also gave him $274 for the bankruptcy filing fee. On March 1, 2006, Mr. Kaplan filed a Chapter 13 petition on behalf of the debtor. On that same date, he also filed a Chapter 13 plan, his disclosure of compensation, and "Rights and Responsibilities

---

[2] The findings of fact contained in this memorandum of opinion reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses, as well as all exhibits admitted into evidence.

of Chapter 13 Debtors and Their Attorneys" (hereinafter, "Statement of Rights and Responsibilities").

According to the disclosure of compensation filed in this case, Mr. Kaplan agreed to accept $1,600 to represent the debtor during her bankruptcy, with $695 paid up front and $905 to be paid through the Chapter 13 plan. According to the Statement of Rights and Responsibilities, Mr. Kaplan agreed to:

1. Continue to represent the debtor through the conclusion of the case, whether by dismissal or discharge.

. . . .

8. Be available to respond to the debtor's questions throughout the life of the plan.

9. Represent the debtor in motions for relief from stay and motions to dismiss or convert.

10. Provide such other legal services as are necessary to the administration of the case before the Bankruptcy Court, which include, but are not limited to, meeting with the debtor, presenting appropriate legal pleadings, and making necessary court appearances.

Statement of Rights and Responsibilities (Docket #4) at 4. The Statement of Rights and Responsibilities also stated that Mr. Kaplan "may not demand or receive any additional fees directly from the debtor, other than the initial retainer, unless the Court orders otherwise." Statement of Rights and Responsibilities (Docket #4) at 5.

3

As indicated in the debtor's Schedule A, the debtor owed about $75,448.42 on her residence located at 3519 W. 99th Street, in Cleveland, Ohio. The debtor scheduled the property with a value of $86,100.00. According to the debtor's Chapter 13 plan filed on March 1, 2006, and the amended plan filed on May 5, 2006, the debtor owed approximately $6,520 in prepetition arrearages on the mortgage.

On April 19, 2006, the Chapter 13 trustee held the meeting of creditors. Mr. Kaplan appeared at the meeting with the debtor. On May 5, 2006, the debtor filed an amended Chapter 13 plan, and on June 8, 2006, the amended plan was confirmed.

According to the debtor's testimony, contact with Mr. Kaplan after June 2006 was difficult. The debtor testified that after filing bankruptcy she continued to pay her mortgage over the phone. She stated that in August 2006 she made a payment, and the telephone computer system indicated that she was "paid up" through December 2006.

On November 1, 2006, creditor Wells Fargo filed a motion for relief from stay regarding the debtor's residence. The motion indicated that the debtor had an outstanding balance of $76,913.76 on the property which the creditor valued at $89,100.00. The motion also indicated that the debtor was delinquent $2,722.02 in

4

postpetition mortgage payments.

The debtor testified that she immediately contacted Mr. Kaplan to notify him of Wells Fargo's motion for relief from stay. Mr. Kaplan told her he did not receive the motion, and he asked her to send it to him, which she did. The debtor testified that after this initial conversation she had difficulty contacting Mr. Kaplan regarding this motion. When she called his office she got messages saying the phone was temporarily disconnected, or she would be directed to voice mail. The debtor finally reached Mr. Kaplan's secretary who told her Mr. Kaplan had thirty days to respond. On November 30, 2006, Wells Fargo's motion for relief from stay was marked as no response granted, and on December 4, 2006, an order was entered granting relief from stay.

Sometime around December 2006 the debtor again met with Mr. Kaplan. According to her testimony, Mr. Kaplan never discussed any possibilities for stopping the foreclosure sale on the house other than the filing of a new Chapter 13 case. At this time, and while the current case remained pending, Mr. Kaplan requested and accepted an additional $724, consisting of $450 for Mr. Kaplan's attorneys fees and $274 for the filing fee in the new case. During this meeting, the debtor asked whether there would be a problem filing another Chapter 13 case because of her pending case. Mr. Kaplan told her not to worry, he would take care

5

of it, and that he could file electronically to stop the sale right before the sale was scheduled.

Between December 2006 and May 2007, the debtor again had difficulties reaching Mr. Kaplan. She testified that in March 2007 she met with Mr. Kaplan to pay $60 for a new credit report, which Mr. Kaplan indicated was actually to obtain the certificate of credit counseling required for the filing of her new Chapter 13 case. According to the debtor, this was her last meeting with Mr. Kaplan before the sheriff's sale on her residence.

During the week of May 14, 2007, the debtor learned that a sheriff's sale was still scheduled to proceed on her residential property on Monday, May 21, 2007, at 8 a.m. The debtor continually attempted to contact Mr. Kaplan, but again only got messages indicating that his phone was temporarily disconnected. Finally, on Friday, May 18, 2007, the last business day before the sheriff's sale, Mr. Kaplan contacted the debtor at work and informed her that there was nothing he could do for her because she had a Chapter 13 case pending and she had received a Chapter 7 discharge within the last eight years.

On Monday morning at 8:31 a.m., May 21, 2007, the day of the sheriff's sale, the debtor appeared at the Court and filed two documents: (1) a Motion to Convert Case from Chapter 13 to Chapter 7 (Docket #31); and (2) a Motion to Stay

Sheriff Sale and Disciplinary Action Against Counsel (Docket #32). According to the filing of creditor Wells Fargo on June 6, 2007, the foreclosure sale on the property went forward on May 21, 2007, and the property sold for $43,334, presumably leaving a deficiency balance of over $33,000 owed by the debtor. On May 22, 2007, Mr. Kaplan wrote a check for $724 to the debtor, for repayment of the fees he collected in December 2006 for the filing of a new Chapter 13 case.

On June 2, 2007, Mr. Kaplan filed an objection to the motion seeking disciplinary action. On June 6, 2007, creditor Wells Fargo filed an objection to the motion to stay the sheriff's sale and indicated that the property was sold to the creditor for $43,334. The creditor argued that because the sale had already occurred it was too late for the debtor to cure the default on the property. On June 7, 2007, the Court heard the debtor's motions. At the hearing the Court denied the motion to stay the sheriff's sale and adjourned the remaining issues for two weeks in order to give the debtor time to consider her requests for conversion and for disciplinary action against Mr. Kaplan. On June 11, 2007, an order was entered denying the debtor's motion to stay the sheriff's sale.

On June 21, 2007, the Court again heard the debtor's requests to convert her case to Chapter 7 and for disciplinary action against Mr. Kaplan. At the hearing the debtor withdrew her motion to convert and asked for a scheduling order on her

motion for disciplinary action. On July 25, 2007, the Court heard the testimony of the debtor and argument from both Mr. Kaplan and the debtor. At the conclusion of the hearing, the Court gave attorney Kaplan until August 3, 2007, to supplement the record, at which time the Court would take the matter under advisement.

CONCLUSIONS OF LAW

Section 329 of the Bankruptcy Code provides in pertinent part:

>    (a) Any attorney representing a debtor in a case under this title . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . .
>    (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
>        (1) the estate, if the property transferred--
>            (A) would have been property of the estate; or
>            (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title.

In addition, section 330(a)(4) of the Bankruptcy Code provides in pertinent part:

>    (B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

*See also* Bankruptcy Rule 2017 (providing that the court may determine whether an attorney's fee for work in a bankruptcy case is excessive). Bankruptcy Rule 2016(b) implements sections 329 and 330, and further provides that a supplemental

8

disclosure of compensation must "be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed." "[B]ankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and the Rules." *Henderson v. Kisseberth* (*In re Kisseberth*), 273 F.3d 714, 720 (6th Cir. 2001), *citing In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996). However, disgorgement under section 329 should be limited to the amount the fees are excessive. *See In re Kisseberth*, 273 F.3d at 720. "Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998), *citing In re Mahendra*, 131 F.3d 750, 758 (8th Cir. 1997).

In making the reasonable value determination under section 329, the Court is guided by section 330 of the Bankruptcy Code, which provides that the Court may award an attorney "reasonable compensation for actual, necessary services rendered." *See In re Geraci*, 138 F.3d at 318. In determining reasonable attorney's fees under section 330, "courts have generally relied upon the lodestar approach." *In re Boddy*, 950 F.2d 334, 337-38 (6th Cir. 1991). The lodestar amount "is calculated by 'multiplying the attorney's reasonable hourly rate by the number of

9

hours reasonably expended.'" *In re Boddy*, 950 F.2d at 337, *quoting Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990).

In this case, the Court finds disgorgement is appropriate. Pursuant to the Statement of Rights and Responsibilities, Mr. Kaplan was to receive $1,600 in exchange for his services, both prepetition and postpetition, for the duration of the Chapter 13 case. Such services were to include: meeting with the debtor to review the debtor's assets, liabilities, income, and expenses; counseling the debtor regarding the advisability of filing either a Chapter 7 or Chapter 13 case; advising the debtor about the need to make plan payments and to attend the § 341 meeting; preparing and filing the debtor's petition, plan, schedules, and statements; representing the debtor through the conclusion of the case; being available to respond to the debtor's questions throughout the life of the plan; representing the debtor in motions for relief from stay and motions to dismiss or convert; and providing such other legal services as are necessary to the administration of the case before the bankruptcy court, which include, but are not limited to, meeting with the debtor, presenting appropriate legal pleadings, and making necessary court appearances. *See* Statement of Rights and Responsibilities at 2, 4.

The Court recognizes that it is hard to put a value on services performed which, on the one hand, resulted in a confirmed Chapter 13 plan, but, on the other

10

hand, resulted in the debtor losing her home.  Nevertheless, for the reasons stated below, the Court believes that $800, or fifty percent, of the $1,600 fee was earned by Mr. Kaplan, with the remaining $800 subject to disgorgement.

According to the Statement of Rights and Responsibilities executed in this case, and as part of the fee received, Mr. Kaplan agreed to continue to represent the debtor, be available to respond to her questions, represent her in motions for relief from stay, and provide such other legal services as necessary throughout the life of her case.  Despite this agreement, Mr. Kaplan was not available to answer the debtor's questions, he did not respond to the motion for relief from stay on her residential property, and he did not provide her with the legal advice she needed.

In this case, Mr. Kaplan prepared the debtor's Chapter 13 petition, a Chapter 13 plan, and an amended Chapter 13 plan.  He accompanied the debtor to her 341 meeting of creditors and appeared in court on her behalf for the hearings on confirmation.  Beyond the limited initial work, Mr. Kaplan has not demonstrated that he provided the debtor with any other beneficial services.  While the amount of work required post-confirmation may not require a lot of time, this time is crucial for debtors.  During this time, debtors need their attorneys to provide counseling and give them the advice of one experienced in bankruptcy.  These counseling services were critical to the debtor, not just in stopping the

11

foreclosure sale, but in succeeding with her Chapter 13 plan. These services were a critical component of representation which should have been provided, but were not. For example, there is no indication that Mr. Kaplan attempted to negotiate an agreement with Wells Fargo that may have given the debtor an opportunity to cure her postpetition mortgage arrearage in exchange for conditional relief from stay, a common practice in this Court. Rather, the services provided by Mr. Kaplan put the debtor in a worse position because she continued to rely on his representation rather than attempt to seek the advice of another attorney or consider other options such as working directly with Wells Fargo or its counsel.

According to the Statement of Rights and Responsibilities, Mr. Kaplan's hourly rate is $150. The Court concludes, applying the lodestar approach, that the reasonable attorney's fees in this case under 11 U.S.C. § 330 are $800. Therefore, Mr. Kaplan is ordered to disgorge $800, the amount by which his compensation exceeds the reasonable value of his services. Pursuant to 11 U.S.C. § 329(b)(1)(B), this amount is to be paid directly to the Chapter 13 trustee.

In addition to requesting that the Court review Mr. Kaplan's fees, the debtor asked the Court to take disciplinary action against Mr. Kaplan. Bankruptcy Rule 2016(b) requires an attorney to file a supplemental disclosure of compensation statement within fifteen days after any payment not previously

disclosed. Similarly, in the Statement of Rights and Responsibilities Mr. Kaplan agreed that he would not "demand or receive any additional fees directly from the debtor . . . unless the Court orders otherwise." Despite this, Mr. Kaplan received $724 during the pendency of this case without a Court order approving the additional fee, and Mr. Kaplan failed to file a supplemental disclosure of compensation. Although Mr. Kaplan did return the $724 approximately three months after receipt, his action does not stop the disciplinary inquiry. In addition to violating the Bankruptcy Rules, Mr. Kaplan may also have neglected a legal matter entrusted to him. *See Cuyahoga County Bar Association v. Rutherford*, 858 N.E.2d 417 (Ohio 2006).

While the Court has a wide array of possible disciplinary options available, including referral to a certified grievance committee in Ohio, the Court believes that no referral is appropriate at this time, due in part to Mr. Kaplan's voluntary agreement to enter into a contract with the Ohio Lawyers Assistance Program (OLAP). The Court believes that the non-monetary, remedial sanctions contained in the accompanying order, such as participation in educational programs and completion of Mr. Kaplan's obligations under his contract with OLAP, are sufficient to ensure that Mr. Kaplan will provide an acceptable level of representation in any cases he may file in the future. Nor does the Court believe

that any lapses in the quality of Mr. Kaplan's services in this case were intentional or malicious. Rather, the Court is simply concerned that debtors in situations similar to that of Ms. Nichols might find their situations made worse, rather than better, by Mr. Kaplan's representation in the future, absent the remedial provisions contained in the accompanying order.

## CONCLUSION

For the foregoing reasons, the Court will issue a separate order requiring attorney Kaplan to disgorge $800 in attorney's fees for the benefit of the debtor's estate and imposing further remedial sanctions upon attorney Kaplan.

IT IS SO ORDERED.